## ATTACHMENT A - STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial, government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

At all times relevant to this case, defendant **LARRY POOLE** ("**POOLE**") was a resident of Laurel, Maryland.

On June 11, 2012, an individual contacted Child Protective Services ("CPS") to report that **POOLE** was sending that individual text messages in which **POOLE** claimed to be molesting an unidentified 9-year-old female. In his texts, **POOLE** claimed that he was babysitting the girl, that he wished he could "lick her," that he "molested her a lil bit," and that the girl was sitting on his lap and he "could feel the little pussy throbbing, really wanted to taste it." CPS referred the matter to the Laurel Police Department. Police were not able to locate any child in **POOLE'S** neighborhood matching the description used by **POOLE** in his texts.

During their investigation, the Laurel police learned that **POOLE** was on federal probation and was registered as a sex offender based on two prior convictions. In 2003, **POOLE** was convicted in Baltimore County Circuit Court of child abuse based on accusations by his daughter and nieces that he touched them in the genital area while they were sitting on his lap. In 2006, **POOLE** was convicted in the United States District Court for the District of Columbia of attempt to entice a minor to engage in sexual activity and possession of child pornography. The attempted enticement charge was based on **POOLE** chatting on the internet about having sex with a person that he believed to be a 13-year-old female, setting up a meeting with that child, and then showing up at the agreed meeting place to pick up that child, which turned out to be an undercover officer.

The Laurel police alerted **POOLE'S** federal probation officer about **POOLE'S** text messages. On June 25, 2012, **POOLE'S** supervising federal probation officer conducted a surprise visit to **POOLE'S** residence. After obtaining consent from **POOLE** to preview **POOLE'S** cell phone, the probation officer discovered what he estimated to be approximately four videos and 75 to 100 images of child pornography on **POOLE'S** cell phone.

After the discovery of these images and videos on **POOLE'S** cellular telephone, **POOLE** waived his *Miranda* rights and agreed to provide a statement. **POOLE** admitted that he possessed child pornography on his cellular telephone. **POOLE** indicated that another individual had visited **POOLE'S** home on June 24, 2012, and provided **POOLE** with child pornography. Specifically, **POOLE** explained that the individual brought child pornography to **POOLE'S** home on a thumb drive or SD card, helped **POOLE** load that child pornography onto **POOLE'S** computer, and then helped **POOLE** transfer the child pornography onto **POOLE'S** cellular telephone. When asked the age of the children depicted in the images and videos on **POOLE'S** phone, **POOLE** indicated that he did not believe there were any girls over the age of 13.

As a result of the images and videos discovered on **POOLE'S** cell phone, the Laurel Police Department and the Federal Bureau of Investigation obtained and executed search warrants on **POOLE'S** cellular telephone and computer and the email account of the individual from whom **POOLE** received child pornography. Forensic analysis of the SD card contained within **POOLE'S** cell phone revealed approximately 6 videos containing prepubescent and pubescent females engaged in masturbation and/or posing nude to expose their genitals. The SD card also contained approximately 120 recovered deleted images of a pubescent female posing nude for the camera exposing her genitals and 250 images of what appears to be the same female posing nude without exposing her genitals. All of the image files appeared to come from one website and be part of the same series. Forensic analysis also revealed the same images and videos had been downloaded onto and then deleted off of **POOLE'S** desktop computer.

The following are examples of the video files that **POOLE** received on June 24, 2012:

- Picture 191.avi: A nude prepubescent female, laying down in a tent in different positions filmed by an adult male. The only image of the male is of his left and right hands as the nude, prepubescent female lays on her stomach, facing away from the camera. The adult male focuses the camera on her genitals and digitally penetrates her and touches her vagina with each hand.

- Picture 192.avi: At the beginning of the video, the pubescent female is clothed, removes her clothing until she is nude. The pubescent female is sitting on the floor in a kitchen and applies what appears to be baby oil on her body and seems to receive direction in a foreign language from another female filming her. The pubescent female then places a dildo in her mouth, turns another dildo on and inserts it in to her vagina and masturbates herself in different positions.

- Picture 190.avi: A nude prepubescent female is laying on a blue couch being filmed and photographed by what sounds like an adult male who is not on screen. The nude prepubescent female is laying on her stomach facing away from the camera exposing her genitals and is then directed to sit in different positions, some positions facing the camera with her genitals exposed.

Analysis of emails sent to and from **POOLE** confirmed that **POOLE** received child pornography on June 24, 2012. Specifically, **POOLE** and the individual who provided him with child pornography exchanged emails on June 24, 2012 in which they discussed their preferences on age of victims depicted and **POOLE** stated, "I like 8 - 12." The emails also contain discussions about when **POOLE** and the individual who provided him the child pornography would meet and **POOLE'S** reactions to the child pornography provided. For example, **POOLE** emailed "I was able to load vids. Onto phone... WOW!" and "Girl with Di[l]do's OS hot."

The images and videos depict real children engaged in sexually explicit conduct. The images and videos were transported through the Internet and therefore traveled in interstate commerce prior to being downloaded onto **POOLE'S** computer and cellular telephone.

**POOLE** admits that he was convicted on January 23, 2007 in the United States District Court for the District of Columbia of attempt to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5), and that these convictions increase his mandatory minimum and maximum sentences pursuant to 18 U.S.C. § 2252A(b)(1).

* * *

I have read this statement of facts, and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_2-21-13_  
Date

_[signature]_  
Larry Poole

I am Larry Poole's attorney. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is a voluntary one.

_2-21-13_  
Date

_[signature]_  
Lisa Lunt, Esq.